HERGET, Judge.
This case was originally tried on May 7, 1959 before the late Honorable Robert D. Jones, then Judge of the Twenty-Second Judicial District Court and subsequently a distinguished and esteemed member of this Court, who, in his written reasons for judgment assigned on the 7 day of December, 1959 observed therein: “ * * * I will sign a judgment when presented to me rejecting the plaintiff’s demands and rejecting the demands of the defendant Sheridan — plaintiff in reconvention. * * * ”
On December 7, 1961 the certified copy of the minutes of the court reflect Honorable Jim W. Richardson, Judge presiding was presented a judgment in this case for the Court’s signature by counsel for Defendants and motion was made by said counsel for an assignment of the case “ * * to be argued in order that the judgment may be signed by the Court.” The Court thereupon assigned the case for argument that day, December 7, the attorneys for both Plaintiff and Defendant being present, and “After hearing the argument of counsel, the Court ordered judgment read and signed herein.” Accordingly, the Trial Court signed the following judgment:
“This cause came on for hearing.
s|< :Jc # sfc
“After hearing the pleadings, the evidence, the testimony, the briefs, and the written reasons for judgment rendered by the Honorable Robert D. Jones, former Judge of this Court:
“IT IS ORDERED, ADJUDGED AND DECREED That the demands of the C. & W. Construction Company are rejected.
“IT IS FURTHER ORDERED, ADJUDGED AND DECREED That the demands of Walter Lee Sheridan, plaintiff in reconvention, are rejected.
“IT IS FURTHER ORDERED, ADJUDGED AND DECREED That C. & W. Construction Company pay all cost of this suit.
“JUDGMENT Rendered, read and signed at Bogalusa, Washington Par *708 ish, Louisiana, on this the 7th day of December, 1961.”
Following the Court’s signing of the judgment motions were made for devolutive appeals to this Court, which appeals were perfected by both Plaintiff and Defendants, and/or defendant Walter Lee Sheridan, plaintiff in reconvention.
We have reviewed the evidence in the case and the law involved and are in thorough accord with the judgment rendered by the Trial Court and in affirming same adopt the opinion of Judge Jones in its entirety as our own, viz.:
“This is a suit for damages for the alleged breach of a contract having to do with the construction of a road in Washington Parish known as the Sun-Bogalusa Highway, and designated in the pleadings as State Projects 30-02-11 and 30-03-07. The plaintiff in the suit is the C & W Construction Company, composed of the partners F. R. Cassidy and C. C. Wade, and the defendants are Walter Lee Sheridan and Travelers Indemnity Company, the Surety on the performance bond of said Sheridan.
“The allegations of the petition show that on March 6, 1958, C. & W. Construction Company entered into a contract to perform certain work on the Sun-Bogalusa Highway — Capital Asphalt Company was the prime' contractor on the job, and C & W Construction Company was the sub-contractor; subsequently, or on March 12, 1958, the C & W Construction Company sub-contracted a part of the work under its contract of the concrete work, steel work, pipe and revetment installation in connection with the project, all for the price and sum of $18,-173.26. It is further alleged that for some time prior to August 14, 1958, Sheridan performed no work, and it became apparent he had abandoned same in violation of his contract, and that he andi his Surety, Travelers Indemnity Company, were notified on August 14, 1958, that he had failed to perform his work in accordance with the terms of the contract and it would be necessary for the plaintiff to take over the work and complete the same, and that Sheridan, failing to continue the work after notification, it was necessary for the plaintiff to renegotiate the contract at a substantial loss and to perform the work, the financial loss resulting therefrom amounting to $32,109.25.
“Defendants in answer admitted the contract but denied any indebtedness whatsoever to the plaintiff; Sheridan denied he ever defaulted under his contract, and further alleges that C & W Construction Company defaulted making it impossible for Sheridan to perform the contract; he alleged that C & W Construction Company defaulted by abandoning the State project on July 30, 1958, abandoning and surrendering same to the prime contractor on September 11, 1958, by failing to furnish signs and painted boards for the barricades according to the terms of the contract; by failing to maintain and place coffer dams for drainage structures as provided in the contract, by allowing the coffer dams to break and turn water on the work your defendant was doing, and by failing to pay Sheridan in accordance with the terms of the contract. Defendant further alleged that he was at all times ready and willing to fulfill his obligations under the contract and was so doing at the time of the abandonment of said contract by C & W Construction Company; assuming the position of plaintiff in reconvention, the defendant Sheridan alleged that he was entitled to recover the sum of $6,430.23 for the work he had performed in accordance with an itemized statement filed in the record, and he is entitled to the sum of $20,000.00 for the breach of the con *709 tract by C & W Construction Company; he further alleges that the humiliation and embarrassment he has suffered as the result of false rumors by the plaintiff as to his having abandoned the contract, has resulted in injury to his credit, and he seeks the sum of $100,000.00 for this item. He has a further item of $17,000.00 for work he alleges he had constructed at the time of the abandonment of the contract by the plaintiff; he further seeks recovery of $10,000.00 for the failure of C & W Construction Company to notify him of its activities in its abandoning and surrendering the contract. These items total the sum of $153,430.23, which defendant — plaintiff in reconvention — seeks recovery therefor.
“The contract between these parties which is annexed to and made a part of this petition, reflects that the defendant Sheridan in connection with the concrete work was to install pipe and concrete cast-in-place revetments. These items are designated in the contract as 4-9-4, 4-9-5, 4 — 9-6, 4-9-7 and 5-19-3. The defendant Sheridan in his testimony on page 47 of the transcript admitted that he did not install any of these items. Thus, his failure to do so constituted a violation by him of the specific terms of his contract.
“The contract further reflects that the plaintiff C & W Construction Company agreed to put dirt coffer dams around the concrete drainage structure. These coffer dams were necessary in order to keep the water off the workmen who were pouring the concrete in the drainage ditches beneath the bridges. It appears from the record that the plaintiff actually constructed coffer dams at three of these bridges, and while plaintiff does not deny that the coffer dams broke in certain instances and leaked at other times, he attributes this faulty construction to the fact that he was told by the defendant Sheridan how to construct said coffer dams. This is denied by Sheridan. To say the least, it was not the duty of the plaintiff to listen to Sheridan about how the coffer dams shortld be constructed, because that was the plaintiff’s duty under the terms of the contract. Sheridan testified that as a result of the breakage and the leakage from the coffer dams that he lost two and one half hours every day as a result of having to pump water from the drainage where he was pouring the concrete. His testimony to this effect is corroborated by three of the workmen on the job, and it was stipulated by Counsel that three other workmen would testify to a like effect. Of course, under the contract, since it was the plaintiff’s duty to construct the dirt coffer dams, they necessarily had to be constructed in such a manner as to keep the water out of the drainage where the concrete was being poured, and certainly if there was leakage or breakage sufficient in said coffer dams to require the workmen to lose two and one half hours each day in pumping the water from the drainage before they could begin their work, then the inefficient and faulty manner in which the coffer dams were constructed constituted a violation of the contract by the plaintiff.
“My conclusion is that both Sheridan and C & W Construction Company failed to comply with the contract and neither of them is in position to demand a penalty for its breach. Danziger et als vs. Tessitore [13 La. App., 450] 126 So. p. 700.
“It is true that while both parties were actively engaged in breaching the contract, the partners of the plaintiff concern did on July 30, 1958, make a trip to Baton Rouge for the purpose of relinquishing their contract to the *710 prime contractor, Capital Asphalt Company, and on the next day, defendant, having ascertained what the plaintiff partners had done, discontinued work on the project, because as he states, they had abandoned said project and owed him money at that time, which they refused to pay. I am of the opinion that the plaintiffs did not owe the defendant Sheridan any money at that time, for he had completed only a little more than one-third of the work and had received $8,500.00 on the contract, which shows that he was to be paid in monthly installments in line with the progress of his work, less the withholding of ten percent thereof. While it is true that the plaintiff C & W Construction Company did not re-negotiate their contract with the prime contractor until after they had notified defendant Sheridan to resume his work, which he refused to do, yet I am satisfied that they reached an agreement with the prime contractor long before they did notify Sheridan. While this preliminary agreement might have been subject to the condition that Sheridan would not return to the work, this is not necessarily so, for Sheridan testified one of the plaintiffs, Mr. Wade, stated to him on July 31, 1958, immediately after returning from Baton Rouge, that he did not know what was going to happen to the contract, and that C & W Construction Company was broke.
“My appreciation of the testimony in the record was that neither party was actually free from fault in connection with the work ceasing on this contract, and I consider this relatively important, because prior to the cessation of the work, both parties had failed to carry out their obligations under the contract, and neither of them can recover damages for the breach. The defendant Travelers Indemnity Company, who was Surety on the bond for the faithful performance of the contract by Sheridan, is of course, not liable for the reasons that the principal is not liable, and for the further reason that several changes were made in the contract. One of these changes I note was the plaintiff agreed to furnish the signs and paint the boards for the barricades, and by a subsequent agreement Sheridan painted the signs and the barricades; further than this, the plaintiff installed all the pipe and revetments, which it was the duty of Sheridan to install under the contract. A Surety has the right to stand on the terms of the contract and if a change therein is made without his consent, even though it is beneficial to the Surety, he is released. Shreveport Laundries Inc. Vs. Sherman [La.App.j #7 So.2d 433; Southern Building [Builders’] Materials Co. Inc. Vs. Photo [Foto] et ais [11 La. App. 255] 122 So. p. 914.
“I might further add that the contract provided monthly installment payments on the 15th of each month, according to the project engineer’s quantities, less ten percent retained. Plaintiff admitted at the time of the cessation of the work he had overpaid Sheridan, so this constituted a further change in the contract. I do believe at the time of the cessation of the work that Sheridan had been paid for more work than he had actually done, but in view of the fact that the plaintiff constructed the defective coffer dams, which delayed the work and necessarily cost Sheridan money in spending some two and one half hours each day removing water from the drains before he could pour the concrete, then it is impossible from the condition of the record for me to allow the plaintiff any reimbursement for the overpayment.
“Accordingly, for the above and foregoing reasons, I will sign a judg *711 ment when presented to me rejecting the plaintiff’s demands and rejecting the demands of the defendant Sheridan —plaintiff in reconvention. Plaintiff to pay the costs of this suit.”
Affirmed.