TAYLOR, Judge.
This is a suit filed by the plaintiff-appellant, M. A. Friedrich, d/b/a Friedrich Refrigeration against Mr. and Mrs. J. I. Grassin for the sum of $959.00. Appellant alleges that he furnished and installed a Carrier Model 38GF403 condensing unit at appellees’ residence and that he has not been paid. Appellees answered and admit that the abovementioned unit was furnished and installed however allege that the unit and accessories, electrical and otherwise, were not properly installed and the unit has failed to function and prayed for a dissolution of the contract and the removal of the said unit by appellant. Appellees also reconvened for $450.00 each for physical and mental pain and suffering.
Judgment was rendered by the lower court after trial on the merits in favor of appellees, Mr. & Mrs. J. I. Grassin, dismissing plaintiff-appellant’s suit at his cost. In his reasons for judgment the trial court authorized the plaintiff-appellant to remove said unit from defendant’s residence and to leave the premises in the original condition, all at plaintiff’s cost.
By separate judgment the plaintiffs in reconvention, Mr. & Mrs. J. I. Grassin, were awarded judgment in the amount of $150.00 for discomfort against the defendant in reconvention, M. A. Friedrich, d/b/a Friedrich Refrigeration.
It is from these two judgments that this appeal is taken.
From a reading of the entire record we are convinced that the trial judge was correct in dissolving the contract. As stated in his reasons for judgment the court concluded that the air conditioner failed to function and such malfunction was because of improper electrical installation.
The testimony substantiates the fact that the electrical wiring servicing this unit was done in violation of Ordinance 2225 of the Governing Authority of Jefferson Parish. A licensed electrical contractor was called as a witness for the defendant relative to the wiring. This witness had inspected the wiring the day before the trial and his testimony is as follows:
“BY MR. BROUSSARD:
Q. Mr. LeCompte, what is your occupation, sir?
*745 A. I am a licensed electrical contractor.
Q. And how long have you been in that business ?
A. Licensed in the Parish 14 years, electrician about 22 years.
Q. Mr. LeCompte, did you have occasion to make an inspection at the residence at 114 Drolla Park, Jefferson Parish, Louisiana ?
A. Yes, I did.
Q. And on this particular occasion, did you have occasion to inspect the air conditioning unit and its electrical attachments ?
A. I did not make an inspection of the unit, but I made an inspection of the wiring going to the unit, supplying the unit.
Q. Now, when did you make this inspection?
A. Yesterday.
Q. And in inspecting the electrical installation between the unit and the house and so forth, could you please tell the Court what was the result of your inspection in relation to the Parish requirement for electrical work under the Code ?
A. Well, the first defect was the Code states there shall be conductors going to a residence or building connected to the service entrance conductors. They are to be behind the main fuses, connected behind the main fuses. Now, the wires that are supplying this unit are not behind the main fuses or any tie-off plugs behind the main fuses, as they are ahead of the main fuses and are attached to the service entrance wires.
Q. Now, is this—
A. This is a violation of the Code.
Q. This is a violation of the Code? Now, does this present a hazard of any kind to the residence or to any electrical unit that may be connected to it ?
A. It is a hazard to the residence, and I wouldn’t say at this particular point that it would be a hazard to the unit, but it would be a a [sic] hazard to the residence.
Q. What else did you find, if anything, in your inspection of this unit ?
A. The Code states that a cabinet containing switches and fuses or protective switches should not have any splices or junctions of any wires whatsoever in it, and there are two splices in the cabinet coming off — leading off the fuses. There are two splices on the two main conductors that are feeding this unit. The wires are possibly twisted and they are — I couldn't see, but there is a possibility that the wires could be loose and causing intermittent service, not full voltage and resistance to this unit, causing some sort of damage.
Q. And when you speak of “this unit,” you are talking about the air conditioning unit ?
A. The air conditioning compressor unit sitting outdoors.
Q. Now, am I to understand that these splices that you referred to cause low voltage, or, as you put it, intermittent voltage ?
A. Or none.
Q. But it is possible that if the unit is running on low voltage or intermittent voltage, it could damage the unit ?
A. Yes, it could.
Q. Is there anything else that you found?
A. Yes, in the disconnect switch which controls the unit or the cut-off current going to the unit that was installed by the air conditioning company, there are two conductors. In this one on the lead side of the fuse, the insulation that covers this copper conductor is not fully trimmed back far enough for this copper conductor to make contact on this copper wire. The fuse is up against the insulation, and *746 the same applies to the lead side of the line, rather, the terminant fuse, too, there is pressing against the insulation, firmly-pressing against the copper conductors, which could lead to the same thing, low voltage, overheating, resistance, and intermittent or no service, maybe from resistance that would make it go on and off.
Q. Now, in your opinion as an electrician, would you consider this to be a proper electrical setup for the unit as you saw it?
A. No, sir, I wouldn’t call it done in a workmanlike manner, and it is not done according to the Code that we follow.
Q. Then, am I correct in saying that as a result of your inspection, you found at least three violations of the electrical Code?
A. Yes, sir.
Q. And any one of them could cause damage to the unit ?
A. Yes.
* * * * * *
May I point out, also, that as Mr. Carbo said the lady stated he could use a fuse block there to pull his conductors off that wasn’t being used. That isn’t so. The fuse blocks are still there, and there are no terminants hooked up to them. They were definitely hooked up to the service entrance conductors, leading off the main fuse block, and this is a dangerous situation.
Q. A dangerous situation?
A. Yes.
Q. As to the unit and as to the residence ?
A. The conductors are attached to the service entrance, and the conductors are a menace to the residence. The splices in the cut-out box that controls the compressor, that could be hazard to the unit.”
The defendants testified that they had no other electrical work done by anyone on this unit and the court obviously found as a fact that the wiring as inspected by Mr. LeCompte, the day before the trial, was the same wiring as put in by the plaintiff. The trial court heard the testimony of all of the witnesses and resolved any discrepancies which may have existed in such testimony. Since it was within the province of the lower court to make findings of fact in this case, we will not substitute our judgment for that of the factfinder unless we find manifest error. We find no such error in this instance.
The contract entered into between defendants and Mr. Friedrich provided that Friedrich would “furnish and install a CARRIER model 38GF403 condensing unit to complete the air conditioning of your residence.” However the unit, as installed by plaintiff, did not function properly. The testimony of defendants is to the effect that the unit would cool adequately for a period of perhaps two or three days at which time they would have to request that a service call be made by plaintiff. Despite attempts to remedy the situation, the unit did not provide comfortable, cooling air during the hot summer months which was the reason for which it was purchased.
We are of the opinion that the contract which plaintiff and defendants entered into constituted an obligation to do, i. e. to furnish and install a condensing unit. Plaintiff violated his obligation when he failed to properly install the unit in a workmanlike manner as such obligation is one implied by law. LSA-C.C. art. 1931. Defendants are therefore entitled to have the contract dissolved and to damages, if they have accrued. LSA-C.C. art. 1926.
The trial court found as a matter of fact that defendants had suffered damages in the amount of $150.00 as a result of their discomfort arising from plaintiff’s *747 breach of his obligation. We find that the record substantiates such an award. Defendants purchased this unit for the purpose of having cooling air during the summer. Plaintiff knew this at the time the contract was entered into. Because of plaintiff’s failure to perform his obligation, defendants suffered through the summer without air conditioning. We find no manifest error in the award made by the trial court.
Since defendant has received a judgment dissolving the contract he entered into with plaintiff, plaintiff is entitled to receive back the unit which he installed on defendants’ premises. Defendants had asked plaintiff to remove the unit from the premises prior to suit, and to return the premises to the status quo which existed prior to the installation. We are of the opinion that the nature of the object involved is such that plaintiff is able to remove the unit without substantial damage to defendants’ property and thereby place defendants in the state in which they were prior to the time the contract was entered into.
For the foregoing reasons the judgment of the trial court is amended and affirmed. There will be judgment in favor of defendants and against plaintiff dismissing plaintiff’s suit at his costs. There will be further judgment in favor of defendant-plaintiff in reconvention, and against plaintiff-defendant in reconvention, in the amount of $150.00 plus legal interest from date of judicial demand until paid. There will be further judgment in favor of plaintiff in reconvention and against defendant in re-convention ordering defendant in recon-vention to receive back and remove from the premises of plaintiff in reconvention the Carrier model condensing unit which he installed, all at the expense of defendant in reconvention.
All costs of this proceeding to be borne by plaintiff, M. A. Friedrich, d/b/a Fried-rich Refrigeration.
Amended and affirmed.