**OLYMPIC INSURANCE COMPANY,
Plaintiff-Appellant,**

v.

**H. D. HARRISON, INC., et al.,
Defendants-Appellees.**

**No. 71-2806.**

United States Court of Appeals,
Fifth Circuit.

July 10, 1972.

Rehearing and Rehearing En Banc
Denied Sept. 25, 1972.

Robert L. Redfearn, Frank J. Peragine, New Orleans, La., for plaintiff-appellant; Deutsch, Kerrigan & Stiles, New Orleans, La., of counsel.

Carl J. Schumacher, Jr., Donald R. Mintz, Clarence F. Favret, Jr., New Orleans, La., Franklin D. Houser, San Antonio, Tex., Harry B. Kelleher, Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, New Orleans, La., for plaintiff in counterclaim-appellee.

Before RIVES, BELL and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

In this diversity case Olympic Insurance Company terminated its agency agreement with H. D. Harrison, Inc., without giving ninety days notice as required by the contract. A jury found that Olympic breached the contract and awarded Harrison $830,231.33 in damages. A review of the record on appeal reveals overwhelming, undisputed evidence that Harrison repeatedly and substantially breached the contract prior to the termination by Olympic. Consequently, we hold that the jury's finding was not supported by sufficient evidence and that Olympic was excused from performance of the contract.

On May 1, 1965, Olympic and Harrison entered into a general agency agreement which allowed Harrison to act as Olympic's general agent for the sale of mobile home insurance policies in fourteen states.[1] The contract was signed by Hugh D. Harrison, president and owner [2] of H. D. Harrison, Inc. Under the terms of the agreement Harrison was to solicit insurance business for Olympic in return for a percentage of the premiums. Although the contract initially required a shorter period of time, the parties subsequently agreed that Harrison would have three months to remit the premiums to Olympic for insurance policies sold in any given

---

1. Alabama, Arkansas, Colorado, Florida, Illinois, Kentucky, Louisiana, Mississippi, Missouri, New Mexico, North Carolina, Oklahoma, South Carolina and Tennessee.

2. Hugh D. Harrison owned 99% of the stock in H. D. Harrison, Inc.

month. Thus, the premium on an insurance policy sold between December 21 and January 20, for example, would not have to be forwarded to Olympic until April 20. The contract further provided that either party could terminate the agreement, for any reason, by sending the other party ninety days notice of cancellation. As security for payment of the premiums, Mr. Harrison and his wife executed a separate document in which they personally guaranteed the payment of any premiums owed by the corporate agency to Olympic.

From its inception, the relationship was unprofitable for Olympic and unsatisfactory to Harrison. Harrison first complained to Olympic about Olympic's method of adjusting and paying losses on claims for mobile home damage. When Olympic failed to act favorably on this complaint, Mr. Harrison deliberately withheld approximately $50,000.00 in premiums which were due Olympic on December 20, 1967. In response, Olympic dispatched a representative who met with Mr. Harrison in New Orleans, Louisiana. After some discussion the parties settled their differences and Harrison paid the past-due premium monies.

In April of 1968, Olympic discovered that Harrison had been selling insurance policies having a term of seven years, and then remitting only one year's premiums of Olympic. Harrison accomplished this feat by falsifying endorsements on the copies of policies sent to Olympic. Nevertheless, Harrison discontinued this practice at the insistence of Olympic, and the contract remained in force.

On June 20, 1968, Harrison issued a check for $50,452.49 to Olympic as payment for premiums due, but when an official of Olympic attempted to cash the check, he was informed that Mr. Harri-

son had stopped payment. Meanwhile, Olympic had previously determined to withdraw from the mobile home insurance business. Pursuant to that decision Olympic wrote Harrison on June 26, 1968, and stated that, "it is our desire to discontinue writing business in your agency effective September 15, 1968".

Although this was the method of termination specifically provided for in the contract,[3] Harrison responded with a course of wrongful conduct designed to preserve the agency agreement. On July 13, 1968, Mr. Harrison advised Olympic that he and Mrs. Harrison were unilaterally cancelling their personal guaranty which they had given as part of the consideration for the agency contract. Mr. Harrison then informed Olympic by letter dated July 19, 1968, that he intended to immediately cancel all existing insurance policies written for Olympic by Harrison. If this threat had been carried out, Olympic would have been obligated to refund portions of the premiums on the cancelled policies. Finally, Harrison withheld the premium payment due on July 20, 1968, which meant that the total amount then owed Olympic exceeded $158,000.00.

As a result of this conduct, Olympic filed suit in federal district court in Louisiana to recover the past-due premiums and to enjoin Mr. Harrison and H. D. Harrison, Inc., from cancelling the insurance policies. Shortly thereafter, on August 2, 1968, representatives of Olympic and Harrison met in New Orleans in an attempt to compromise their differences. At the meeting Mr. Harrison stated that he had transferred all the assets out of the corporation, and that the insurance agency was just a shell. Despite this statement the parties were able to reach at least a partial set-

---

3. The complete termination clause provided as follows:
"This Agreement may be terminated by either party upon ninety days (90) written notice to the other party. No such termination, however, terminates any liability of either party to the other party for actions occurring prior to the termination of this Agreement, and all such payments shall continue to be due and payable in accordance with this Agreement."

tlement. Harrison gave Olympic a check for the total amount of past-due premiums, and Olympic furnished Harrison with a letter which stated that the business relationship would continue and that "Your (Harrison's) account is now current".

The parties further agreed to draft a compromise agreement to be signed and executed at a later date. However, when the compromise agreement was presented to Mr. Harrison, he would not sign because the agreement continued the personal guaranty which he had previously renounced. Then, in an attempt to force Olympic to stop insisting on the personal guaranty, Mr. Harrison refused to make the premium payment which came due on August 20, 1968. Although Mr. Harrison finally made this payment sixteen days later, on September 5, 1968, Olympic had apparently been pushed far enough. On September 4th, Olympic amended its complaint in district court to include Harrison's default on the August 20th payment. Harrison then filed a counterclaim alleging that Olympic had systematically conspired to breach the agency agreement.

At a hearing before the district judge on September 18, 1968, Mr. Harrison took the witness stand and testified that the fixed assets of Harrison had been transferred out of the corporation and that he "doubted" that Harrison could meet the premium payments due on September 20 and October 20. The hearing was recessed and then resumed on September 20th. Mr. Harrison again took the stand and testified that a check for the premium payment due on that day would "go out in today's mail". At this point Olympic advised Harrison in open court that the agency contract was terminated immediately, and that Olympic

would no longer recognize Harrison as its agent. The hearing adjourned; and Olympic proceeded with its suit to recover the premium payments, including those payments which Harrison failed to make on September 20 and October 20.

On January 21, 1969, the district court granted Olympic's motion for summary judgment, and held that Harrison owed Olympic $302,755.63 for premiums on insurance policies sold by Harrison. The court also held that Mr. and Mrs. Harrison's personal guaranty was binding, and that they stood personally liable to Olympic for the debts of the corporation. For some reason, which we are unable to determine, the district court's order granting summary judgment was then appealed to this court on February 7, 1969—before there had been an adjudication of Harrison's counterclaim against Olympic. While the propriety of the summary judgment was being considered at the appellate level, various motions were yet being filed in the district court in regard to the counterclaim. This court rendered a final decision on October 6, 1969, which, in effect, affirmed the granting of summary judgment by the district court. Olympic Insurance Co. v. H. D. Harrison, Incorporated, 5 Cir. 1969, 418 F.2d 669.[4]

The counterclaim remained pending in the district court until December 5, 1969, when Harrison filed an amendment and asserted for the first time, that Olympic had breached the contract by failing to give ninety days notice before the termination in open court on September 20, 1968. The amended Harrison counterclaim was tried before a jury which returned a verdict for Harrison in the amount of $830,231.33. The jury reached its verdict by answering

4. In this case this court reinstated its earlier dismissal of the appeal for failure to comply with Rule 12(c) of the Federal Rules of Appellate Procedure. See Olympic Ins. Co. v. H. D. Harrison, Incorporated, 5 Cir. 1969, 413 F.2d 973.

Although the appeal was technically dismissed, it is clear from the opinion in 418 F.2d 669 that this court's decision went to the merits and had the effect of affirming the district court's order granting summary judgment for Olympic.

three interrogatories, the first of which was as follows: [5]

"1. Do you find from all the evidence in this case that Olympic Insurance Company was justified in terminating its agency relationship with H. D. Harrison, Incorporated on September 20, 1968? Answer _____ Yes or NO. No."

After the verdict Olympic moved for judgment n. o. v. The district court denied the motion and entered judgment in favor of Harrison. This appeal followed.

At the outset we note that the essence of the jury's finding was that Olympic had a binding obligation on September 20, 1968, to notify Harrison ninety days before cancelling the contract. Olympic contends on appeal that the evidence in the record will not sustain such a finding; and we agree.

■ The law to be applied here is, of course, that of the State of Louisiana. Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. Similar to other jurisdictions,[6] Louisiana recognizes the principle that where one party substantially breaches a contract the other party to it has a defense and an excuse for non-performance. Sullivan v. Carpenter, La.App.1966, 193 So.2d 105; Rosenberger v. Hutchinson, La.App. 1962, 143 So.2d 604; C. & W. Construction Co. v. Travelers Indemnity Co., La. App.1962, 147 So.2d 706; See Friedrich v. Grassin, La.App.1971, 245 So.2d 743; Dales Jewelers and Home Furnishers, Inc. v. Jones, La.App.1967, 204 So.2d 126; Marek v. McHardy, 1958, 234 La. 841, 101 So.2d 689; Mitchell v. Holder, La.App.1951, 51 So.2d 828. This rule of law was clearly expressed in the district court's instruction to the jury:

"The parties have agreed that the relationship between these parties was that of principal and agent, with Olympic being the principal and Harrison being the agent.

"When an agent breaches his obligation to the principal, or threatens to breach it, the principal may terminate the agency contract. The breach must be one that can be regarded as serious to justify termination. The failure or neglect of the agent, or the threatened violation of his obligation, must be substantial and significant and relate to some important duty to the principal under the contract of agency."

The record before us reveals that Harrison breached its contract on nine separate occasions between December 20, 1967, and September 18, 1968. None of the breaches was denied by Harrison. Indeed, Mr. Harrison himself admitted on cross-examination that he had engaged in the wrongful conduct as alleged by Olympic. A summary of Mr. Harrison's conduct reveals that during the ten-month period he attempted to withdraw his personal guaranty; he transferred assets out of the corporation; he falsified the length of terms on insurance policies; he threatened to cancel all existing insurance policies; and he repeatedly and intentionally withheld premium payments as they came due under the contract. It is of course true that Harrison and Olympic reached a settlement on August 2, 1968, when Harrison paid the past-due premiums and brought its account up to date. However, Harrison continued to breach the contract after the settlement. On August 20, 1968, when the next premium payment was due, Mr. Harrison again refused to turn over the monies as required by the contract. At this time Mr. Harrison still maintained to Olympic that he would not honor his personal guaranty which was later upheld as a valid agreement by this court. Olympic Insurance Co. v. Harrison, Incorporated, supra. Finally, Mr. Harrison announced in court on September 18, 1968, that he doubted the corpo-

---

5. The other two interrogatories read as follows:

"2. Did H. D. Harrison, Incorporated sustain damages as a result of Olympic's termination?

Answer Yes Yes or _____ No.

"3. What is the dollar value of the damages sustained by H. D. Harrison, Incorporated?

$830,231.33."

6. See Vol. 11, Williston on Contracts, 3rd Ed., § 1301 and § 1305.

ration would be able to make the payments for September and October.[7]

■ This court is well aware of the standard that must be employed in determining whether there was sufficient evidence to submit a case to the jury.

"On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the nonmover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n. o. v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses." Boeing Company v. Shipman, 5 Cir. (En Banc) 1969, 411 F.2d 365, 374, 375.

■ In this case the numerous breaches by Harrison were undisputed facts, not controverted by any other evidence. We can only assume that the jury found that the breaches were insubstantial and of little effect on Olympic's stake in the contract. Such a finding, however, is erroneous as a matter of law. Boeing Company v. Shipman, supra.

Harrison's violations of the contract went to the very foundation of its business relationship with Olympic. In express violation of the agreement Mr. Harrison cancelled his personal guaranty and persisted in intentionally withholding premiums on insurance risks which Olympic was then obligated to bear. By these acts, which occurred both before and after the August settlement, Harrison deprived Olympic of the contractual assurance of being paid for policies sold through the Harrison agency. If Olympic had complied with the ninety-days-notice requirement on September 20, 1968, instead of terminating the agreement forthwith, Harrison would have been free to continue writing insurance policies which bound Olympic. And yet, due to Harrison's constant violations of the contract, Olympic could reasonably doubt that it would receive compensation for the risks undertaken. We hold, as a matter of law, that these uncontroverted breaches were substantial, and that Olympic was excused from further performance under the contract.

In view of this holding, it is unnecessary to consider Olympic's other assignments of error.

The judgment of the district court is reversed and the case is remanded with directions to enter judgment in favor of Olympic Insurance Company.

Reversed and remanded with directions.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

### PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

---

7. In this regard we note that Louisiana recognizes the doctrine of anticipatory breach of contract. Marek v. McHardy, 1958, 234 La. 841, 101 So.2d 689.