# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 31, 2012

No. 11-20290

Lyle W. Cayce
Clerk

MICHAEL BAISDEN,

                       Plaintiff–Appellant  Cross–Appellee

v.

I'M READY PRODUCTIONS, INC.; IMAGE ENTERTAINMENT, INC.; A.L.W. ENTERTAINMENT INC.; GARY SHERRELL GUIDRY; JE'CARYOUS FRANKNEQUE JOHNSON,

                       Defendants–Appellees  Cross–Appellants

Appeals from the United States District Court for the
Southern District of Texas

Before KING, PRADO, and HAYNES, Circuit Judges.

KING, Circuit Judge:

Plaintiff-Appellant Michael Baisden appeals an adverse judgment in his suit against various defendants for copyright infringement, breach of contract, and tortious interference.  Defendants-Appellees I'm Ready Productions, Inc., Image Entertainment, Inc., A.L.W. Entertainment Inc., Gary Sherrell Guidry, and Je'caryous Frankneque Johnson cross-appeal the denial of attorneys' fees. For the following reasons, we AFFIRM the judgment of the district court in all respects.

No. 11-20290

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

Michael Baisden is the host of a nationally syndicated radio show and the author of several books. Gary Guidry and Je'Caryous Johnson are the co-founders of I'm Ready Productions, Inc. ("IRP"), a theatrical production company. In early 2001 Baisden entered into discussions with Johnson and Guidry to adapt one of his novels, *Men Cry in the Dark*, into a stage play.[2] The parties entered into an agreement on March 9, 2001 (the "2001 *Men Cry* Agreement") whereby IRP agreed to create an original screenplay based on the novel *Men Cry in the Dark*.

The 2001 *Men Cry* Agreement included two provisions relating to ownership rights. First, the agreement provided that the author, IRP, would "retain copyrights to the STAGEPLAY, as copyright is limited to the play script created by [IRP]." Second, Baisden also "agree[d] that all interest in any creative production, staging, design, or writing aspects of the PLAY are exclusive property of [IRP]." The agreement also provided that IRP would own exclusive merchandising rights from, but not limited to, clothing, posters, programs, mugs, CDs, or tapes. Baisden would receive a 40% share of net profits from all such merchandising sales connected with the live performance of the stage play, but not including profits from novels written by him and sold at such performances. Baisden also agreed to compensate IRP with a 40% share of net profits from all novels, videos, or other works created by him in connection with the live performance of the stage play. Finally, royalties or other proceeds generated as a result of future agreements with third parties relating to the stage play or its

---

[1] Because Baisden challenges the sufficiency of the evidence supporting the jury's verdict, this court accepts the facts in the light most favorable to the prevailing party. *Snyder v. Trepagnier*, 142 F.3d 791, 795 (5th Cir. 1998).

[2] *Men Cry in the Dark* is described as "an urban perspective of how four men relate to the unique women in their lives" while confronting issues such as "racism in corporate America, fidelity vs. casual sex, and the bonds of friendship."

No. 11-20290

production would be split evenly. The 2001 *Men Cry* Agreement was to last three years, but could be extended for the life of any future third-party merchandise agreement associated with the stage play.

IRP adapted Baisden's novel into a stage play ("*Men Cry*"). IRP then took *Men Cry* on a national tour beginning in January of 2002. During the tour, Baisden sold a number of different products at the shows, including three books and two videos on relationships. IRP, for its part, sold programs and t-shirts. In the spring of 2002, Baisden and IRP agreed to orally modify the merchandising provisions in the 2001 *Men Cry* Agreement to reflect that each party would keep 100% of the profits from its own products.

In July of 2002 the parties entered into a second contract to adapt another of Baisden's novels, *The Maintenance Man*, into a stage play (the "2002 *Maintenance Man* Agreement").[3]   This agreement contained provisions substantially identical to those in the original 2001 *Men Cry* Agreement. As before, IRP produced a stage play ("*Maintenance Man*"). But prior to taking that production on tour, the parties modified the agreement in December of 2002 to compensate IRP $300,000 in the event Baisden conveyed motion picture rights in *The Maintenance Man* to a motion picture company and gave it the right to make full use of the IRP-created screenplay.

Around the same time, in September of 2002, IRP filmed a live production of *Men Cry* and *Maintenance Man* and sold copies of those recordings in video and DVD format through A.J. Productions. Baisden learned of these recordings, at the latest, in April of 2003 when he ordered 500 copies of the *Men Cry* recording.[4]   Baisden handed out between sixty and seventy copies of the

---

[3] *The Maintenance Man* follows the lives of four primary characters, but focuses on Malcolm Tremell, "a high-priced gigolo who . . . finally meets the woman of his dreams."

[4] Baisden disputes that he ordered the DVDs. However, evidence adduced at trial shows that his employee, Yvonne Gilliam, ordered the recordings on his behalf, shipped them

No. 11-20290

recording at a promotional event at which he provided one to every person who purchased a copy of his *Men Cry in the Dark* novel.  Baisden's website also sold the DVD for a time, and, eventually, listed it as "sold out."

In the Summer of 2005, Baisden asked IRP to retour *Men Cry*.  The parties orally agreed that the second tour would be governed by the same terms as the 2001 *Men Cry* Agreement, except that Baisden would be entitled to 3% royalties from gross revenues of seats sold per show (the "2005 *Men Cry* Agreement").  Baisden appeared at some of these shows and autographed copies of the *Men Cry* and *Maintenance Man* DVDs.  The second *Men Cry* tour concluded on November 20, 2005.  Pursuant to their agreement, IRP sent Baisden a check for $44,145, which he cashed on December 29, 2005.

On November 15, 2005, a few days before the second *Men Cry* tour ended, IRP entered into a contract with Image Entertainment ("Image") to distribute DVDs of both plays.  In January of 2007, Baisden remarked on the poor timing of the DVDs, and that he did not like the look of the video.  The DVD was released on February 7, 2007.  On May 4, 2007, Baisden sent IRP a cease and desist letter alleging that IRP was infringing his copyrights.  On June 14, 2007, an entity known as the Farcor Baisden Partnership, L.L.C.—of which Baisden was presumably a part—entered into an option contract with Behave Productions, Inc., to turn *The Maintenance Man* into a movie.  As part of that contract, Baisden agreed to use his best efforts to cause IRP to "cease distribution of the unauthorized picture."

Baisden filed suit on February 7, 2008, alleging that IRP, Image, A.L.W. Entertainment Inc., Guidry, and Johnson (collectively, "Defendants") infringed his copyright in *The Maintenance Man* and breached the 2002 *Maintenance Man* Agreement by failing to compensate him for DVD sales.  Baisden added similar

to his address, and billed them to his account.

claims with respect to the *Men Cry* DVD in November of 2008.  Defendants then moved for summary judgment.  On recommendation by a magistrate judge, the district judge granted Defendants' motion with respect to Baisden's claim for tortious interference, as well as those parts of his copyright infringement and breach of contract claims that fell outside the statutory limitations period.

The remaining claims proceeded to a nine-day jury trial.  The jury returned a 33-question special verdict in Defendants' favor.[5]  Baisden moved for judgment as a matter of law or, alternatively, a new trial, which the district court denied.  The district court then entered a final take-nothing judgment as to all parties.  The court also entered a number of declarations clarifying the parties' rights.  Finally, the court denied Defendants' request for attorneys' fees.  Baisden appealed the judgment, and Defendants cross-appealed the denial of attorneys' fees.

## II. DISCUSSION

Baisden raises numerous issues on appeal.  These require us to address, first, whether Defendants infringed Baisden's copyrights; second, whether the district court's declarations improperly expanded IRP's copyrights; third, whether the district court erred in denying Baisden's motion for a new trial; fourth, whether the district court erred in granting summary judgment against Baisden's tortious interference claim; and, fifth, whether the district court erred in denying Defendants' request for attorneys' fees.

### A.    Standard of Review

A district court must deny a motion for judgment as a matter of law "unless the facts and inferences point 'so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion.'" *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235 (5th Cir. 2001)

---

[5] The jury did not find in IRP's favor on its counterclaims.  These claims have not been appealed.

(citation omitted). Although we review de novo the denial of a motion for judgment as a matter of law, we apply the same legal standard as the district court. *Id.* We will consider all of the evidence, drawing all reasonable inferences and resolving all credibility determinations in the light most favorable to the non-moving party. *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 282 (5th Cir. 2007). "[O]ur standard of review with respect to a jury verdict is especially deferential." *SMI Owen Steel Co., Inc. v. Marsh USA, Inc.*, 520 F.3d 432, 437 (5th Cir. 2008). This court "cannot reverse a denial of a motion for judgment as a matter of law unless the jury's factual findings are not supported by substantial evidence, or if the legal conclusions implied from the jury's verdict cannot in law be supported by those findings." *Am. Home Assurance Co. v. United Space Alliance, LLC*, 378 F.3d 482, 488 (5th Cir. 2004).

**B.    Copyright Infringement**

Baisden presents a host of arguments in support of his copyright infringement claim. These include that the oral agreement allegedly made in 2005 was not a work-for-hire agreement and was thus invalid, was contrary to the parties' intentions, had to be in writing pursuant to 17 U.S.C. § 204(a), and was in violation of the statute of frauds. Defendants respond that they had exclusive or implied licenses to distribute DVDs of both stage productions.

To prove copyright infringement a party must show that "(1) he owns a valid copyright and (2) the defendant copied constituent elements of the plaintiff's work that are original." *Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 367 (5th Cir. 2004), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237 (2010). The second element is met where a plaintiff proves "(1) factual copying and (2) substantial similarity." *Id.* But regardless of whether a plaintiff can meet these elements, "the existence of a license authorizing the use of copyrighted material is an affirmative defense to an allegation of infringement." *Carson v. Dynegy, Inc.*, 344 F.3d 446, 451 n.5

No. 11-20290

(5th Cir. 2003). Such a license may be either exclusive or non-exclusive; if exclusive, it must be in writing. *See id.* Throughout, the burden remains on the defendant to prove the existence of a license. *Id.*

Here, two works based on two separate novels are at issue. Accordingly, this court separately considers whether Defendants have demonstrated the existence of a license as to each of them. Because we agree that the facts of this case support the creation of an exclusive license as to the first, and an implied nonexclusive license as to the second, we affirm the jury's verdict that Defendants did not infringe Baisden's copyrights.[6]

### 1.    2002 *Maintenance Man* Agreement

The parties' 2002 *Maintenance Man* Agreement granted Defendants a license to distribute DVDs of the plays.[7] The agreements could be extended if IRP entered into a merchandising deal with a third party during the 2002 *Maintenance Man* Agreement's three-year duration. Such an agreement would extend the duration of the merchandising provision for the life of that agreement.

At trial, the jury concluded that the parties had executed a revision of the 2002 *Maintenance Man* Agreement in December of 2002. The jury further found that IRP and Image had entered into a licensing agreement for distribution of *Maintenance Man* video recordings at some point prior to the expiration of that agreement. Baisden has not challenged these findings. Accordingly, we will not

---

[6] Having found that the jury's verdict can be upheld on the basis of an implied nonexclusive license, this court does not reach the question of whether the screenplays were substantially similar to the novels.

[7] The agreement includes broad language that "merchandise" includes, but is not limited to, "clothing, posters, programs, mugs, CDs or tapes." Given the expansive language of the provision, this court has no difficulty in finding that DVDs are sufficiently analogous to "CDs or tapes" to be included in the agreements.

7

overturn the jury's verdict that Defendants did not infringe Baisden's copyright as to this work. *Am. Home Assurance Co.*, 378 F.3d at 488-89.

### 2.    2005 *Men Cry* Agreement

Defendants were contractually entitled to distribute copies of the *Men Cry* DVDs for the three-year duration of the 2001 *Men Cry* Agreement. This meant that if Defendants wished to extend the life of this arrangement they had until approximately March 2005 to negotiate an extension or finalize a merchandise agreement with a third party. The 2001 *Men Cry* Agreement would then be extended for the life of that third-party contract. IRP, however, did not enter into such an agreement with Image until November 15, 2005, several months after the three-year period had expired.

The jury nonetheless found that Defendants had not infringed Baisden's copyright. Instead, it found that IRP and Baisden entered into an oral agreement in 2005 renewing or extending the 2001 *Men Cry* Agreement. It is this finding that is, in Baisden's words, the "fulcrum of this appeal."

According to Baisden, it was improper for the district court to submit the question of oral modification or agreement to the jury. He advances a number of arguments in support. His primary focus is 17 U.S.C. § 204(a), which provides that "[a] transfer of copyright ownership . . . is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed." Baisden contends that Defendants can point to no written instrument which conveyed his copyrights to IRP. We agree.

The only writing IRP presents is a royalty check for the second *Men Cry* tour. That check merely states that it was for "*Men Cry in the Dark* Fall 2005 Royalties (Paid in Full)." The check does not expressly refer to an assignment of copyrights. *See Playboy Enters., Inc. v. Dumas*, 53 F.3d 549, 564 (2d Cir. 1995) (applying clearly erroneous standard and deferring to district court's determination that check for past "assignment . . . of all rights, title and

interest" was insufficient to transfer copyrights). Nor is there any other writing that would support the check's transfer of copyrights. *See Johnson v. Tuff-n-Rumble Mgmt., Inc.*, No. 99-1374, 2000 WL 1145748, at *6 (E.D. La. Aug. 14, 2000) (holding § 204(a)'s writing requirement satisfied by check stating "assignment of [plaintiff's] copyrights to [defendant] agreement dated June 17, 1997," where there was also an unsigned contract referring to check). We thus agree that IRP cannot show that the royalties check was a transfer of copyright. But although this precludes Defendants from proving the existence of an exclusive license, it remains possible that IRP held an implied nonexclusive license.

Consent for an implied license may take the form of permission or lack of objection. *Lulirama Ltd., Inc. v. Axcess Broad. Servs., Inc.*, 128 F.3d 872, 879 (5th Cir. 1997) ("*Lulirama*"). During the 2005 *Men Cry* Tour, Baisden attended showings of the stage play, and autographed copies of the DVDs. Baisden also acted dismissively during a conversation in January of 2007 with Johnson and Guidry, describing the DVD sales as small and behind him, and that he did not like their look. Most importantly, the jury heard, and found credible, testimony by Johnson and Guidry that Baisden and IRP orally agreed to continue their relationship under the terms of the 2001 *Men Cry* Agreement. This was more than sufficient for the jury to find that Baisden had granted IRP a nonexclusive license to continue engaging in the sale of DVDs.[8] Accordingly, the evidence was sufficient for a jury to conclude that IRP was granted an implied nonexclusive

---

[8] Defendants point to several other events to support their claim for an implied license. These include that Baisden already knew that DVDs were being produced from the staged productions in April of 2003, and did not object until May 4, 2007. Baisden also ordered copies for himself and used them as a promotional tool, and sold the DVDs on his website. These acts all occurred while the 2001 *Men Cry* Agreement was still in effect. As we have already observed, the written agreements provided IRP the right to sell recordings of the stage plays. Therefore, these facts cannot support a finding that IRP retained the right *after* the written agreements expired.

No. 11-20290

license. *See Meredith v. La. Fed'n of Teachers*, 209 F.3d 398, 403-04 (5th Cir. 2000) (plaintiff's testimony and corroborating circumstances constituted substantial evidence to support jury's finding of oral contract).

Baisden resists this conclusion on a number of grounds. Of these, the majority are raised in his reply brief. "It is well-settled that, generally, we will not consider issues raised for the first time in a reply brief." *United States v. Jackson*, 50 F.3d 1335, 1340 n.7 (5th Cir. 1995). Although we find the majority of Baisden's arguments on implied nonexclusive license waived, we address them to clarify and reaffirm our holding in *Lulirama*.

In *Lulirama*, plaintiff contracted with defendant to create advertising jingles. Although the original contract was in writing, the parties later orally extended it beyond the written end date. 128 F.3d at 874-75. We observed that § 101 of the Copyright Act expressly excludes nonexclusive licenses from § 204(a)'s writing requirement, and affirmed the district court's holding that the parties' conduct granted defendant a nonexclusive license in the jingles by implication. *Id.* at 879. In so doing, we held that "[w]hen the totality of the parties' conduct indicates an intent to grant such permission, the result is a legal nonexclusive license . . . ." *Id.* (quoting 3 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 10.03[A], at 10-41 (1997)).

Contrary to this holding, Baisden argues that an implied license can only arise in the context of a work-for-hire agreement. He argues that the relevant test in *Lulirama* requires that "(1) a person (the licensee) request[ ] the creation of a work, (2) the creator (the licensor) make[ ] the particular work and deliver[ ] it to the licensee who requested it, and (3) the licensor intend[ ] that the licensee-requestor copy and distribute the work." *Id.* But Baisden ignores that those elements were prefaced by our remark that "[o]*ther* circuits have held that an implied nonexclusive license arises" when these three elements are met. *Id.* (emphasis added). To be sure, we applied those three elements in *Lulirama*.

10

But we have never held that an implied license could not arise in other circumstances where the totality of the parties' conduct supported such an outcome. *Id.*; *see also Food Consulting Grp., Inc. v. Azzalino*, 270 F.3d 821, 826 n.9 (9th Cir. 2001) (correctly stating test in Fifth Circuit). Other decisions support this conclusion. *See Carson*, 344 F.3d at 451-53 (considering whether nonexclusive license was created despite defendant not having asked plaintiff to create a product); *see also Falcon Enters., Inc. v. Publishers Serv., Inc.*, 438 F. App'x 579, 581 (9th Cir. 2011) (unpublished opinion) (affirming district court's finding of a nonexclusive license while acknowledging that licensee had not asked copyright owner to produce copyrighted material); *John G. Danielson, Inc. v. Winchester-Conant Props., Inc.*, 322 F.3d 26, 41 (1st Cir. 2003) (considering nonexclusive license defense where third party, not defendant, requested production of copyrighted work).

Baisden's remaining arguments do not alter this conclusion. He argues that because the prior 2001 *Men Cry* Agreement conferred an exclusive license, the parties could not now have agreed to a nonexclusive license. But at the time the 2005 *Men Cry* Agreement was made, the previous 2001 *Men Cry* Agreement, which was to last only three years, had already expired. It thus could not keep the parties from reaching a new agreement.

Also unpersuasive is Baisden's contention that the parties could not have intended to create an implied nonexclusive license because IRP entered into an exclusive agreement with Image for production of the DVDs. A similar argument was rejected by the Eleventh Circuit in *Jacob Maxwell, Inc. v. Veeck*, 110 F.3d 749 (11th Cir. 1997). There, plaintiff argued that "it was error for the court to infer the creation of a *nonexclusive* license from the parties' conduct when they had explicitly agreed, albeit in an unenforceable oral exchange, to an *exclusive* license." *Id.* at 752 (emphasis in original). The court held that "while it may well be that the parties in their initial negotiations contemplated an

exclusive license" this did not mean that plaintiff could not have "granted to the [defendant] the sort of lesser, nonexclusive license to [use the copyrighted work] that federal law recognizes may result from a purely oral transaction." *Id.* at 753. Applying the same reasoning, we rejected the plaintiff's argument in *Lulirama* that the parties' intent to transfer an exclusive license for the jingles foreclosed the creation of a nonexclusive license. 128 F.3d at 879-80.

Similarly here, we reject Baisden's argument that Image's intent to enter into an exclusive agreement prevented Baisden and IRP from establishing an implied nonexclusive license. There is nothing to suggest that IRP would not have entered into the 2005 *Men Cry* Agreement absent exclusivity. Indeed, the 2001 *Men Cry* Agreement, on which the later agreement was based, included a clause providing that "[i]n the event that any provision of this Agreement shall be held invalid or unenforceable, it shall not in any way invalidate, impair or affect the remaining provisions of this Agreement."

Alternatively, Baisden argues that extensions to the 2001 *Men Cry* Agreement had to be in writing. In relevant part, that agreement stated that "[t]he period of this Agreement may be extended for a second three (3) year period upon PRODUCER'S written notice received by AUTHOR at least thirty (30) days prior to the expiration of the TERM." Baisden seeks to infer from this language that the agreement could only be renewed or extended in writing.

Baisden's argument is wrong, first, because, even assuming that his interpretation was correct, the 2001 *Men Cry* Agreement had expired by the time the parties reached an oral agreement to run a second tour of *Men Cry*. The terms of the expired contract could not prevent the parties from reaching a new agreement structured on the same provisions as the old one. Second, the agreement itself nowhere states that an extension or renewal had to be in writing. The agreement uses the permissive term "may" to indicate that written notice is only one of the means the agreement could be extended. *See*

*Retractable Techs. Inc. v. Abbott Labs. Inc.*, 281 F. App'x 275, 276 (5th Cir. 2008) (per curiam) (interpreting contractual provision that disputes "may" be resolved by arbitration as permissive rather than mandatory).  Baisden also seems to ignore that the quoted provision goes on to say that the fee for this three year extension would be negotiated "at the time of the option notice." Thus, Baisden's extension clause was really only a means by which the parties could enter into negotiations to renew the contract.  The parties remained free to reach an alternate agreement.

Baisden also argues that the 2005 *Men Cry* Agreement is invalid under the Texas Statute of Frauds.  Section 26.01(a) of the Texas Business and Commerce Code provides that "[a] promise or agreement described in Subsection (b) of this section is not enforceable unless the promise or agreement . . . is (1) in writing; and (2) signed by the person to be charged with the promise or agreement." Absent from Baisden's argument is which part of subsection (b) applies to the agreement.  Only in his reply brief does Baisden elaborate that three subparts apply.  Of these, two—contracts conveying exclusive rights under § 204(a) and modifications to contracts under § 204—do not actually appear in the Texas Statute of Frauds.  The third refers to subpart (b)(6), "an agreement which is not to be performed within one year from the date of making the agreement."  Tex. Bus. & Com. § 26.01(b)(6).  Contracts for an indefinite term that could be performed within one year do not fall within the statute of frauds.  *Floors Unlimited, Inc. v. Fieldcrest Cannon, Inc.*, 55 F.3d 181, 186 (5th Cir. 1995); *see also Abatement Inc. v. Williams*, 324 S.W.3d 858, 860 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) ("For the one-year provision to apply, performance within one year must be impossible.").  In any event, performance takes this case out of the statute of frauds.  It is undisputed that the 2005 *Men Cry* Agreement was performed within one year.  The parties entered into the 2005 *Men Cry* Agreement in the Summer of 2005, and the final performance of *Men Cry* was

on November 20, 2005.  As a result of this second tour, IRP paid Baisden over $44,000.  This is sufficient to preserve the parties' agreement and remove it from the statute of frauds.  *See Matter of Fairchild Aircraft Corp.*, 6 F.3d 1119, 1128-29 (5th Cir. 1993) (discussing partial and full performance exceptions to the statute of frauds).

Having addressed Baisden's many arguments, and finding them unpersuasive, we return to our original conclusion that the jury's verdict was supported by substantial evidence and affirm that Defendants did not infringe Baisden's copyrights.

## C.    Declaratory Judgments

Following the jury's verdict, the district court entered a final judgment including several declarations setting forth the parties' respective rights. Baisden challenges the following two declarations as improperly expanding IRP's copyrights.

> [1.]    Pursuant to ¶ II.3 of the December 2002 The Maintenance Man Agreement, IRP owns the sole and exclusive copyright . . . to The Maintenance Man stage play script, associated music, and lyrics.
>
> [2.]    Pursuant to ¶ II.3 of the Men Cry in the Dark Agreement, IRP owns the sole and exclusive copyright . . . to the script for its Men Cry in the Dark stage play.

The cited agreement provisions provide, in turn, that IRP "shall retain the copyright to the [*Men Cry*] STAGEPLAY, as copyright is limited to the play script created by [IRP]" and that IRP "shall retain the sole and exclusive copyright to the [*Maintenance Man*] Stageplay," but that "[t]his copyright is limited to the play script with associated music and lyrics created by [IRP]."

The issue is whether these declarations deprive Baisden of his copyright in the novels.  The central difficulty arises from the fact that whereas the 2001

*Men Cry* Agreement and the 2002 *Maintenance Man* Agreement contain language that explicitly limit IRP's copyright to the stage play *it created*, the district court's declarations could be read to mean that IRP has a copyright to the *entire* stage play, including parts taken directly from Baisden's novels.[9]

Defendants fail to recognize, or ignore, this distinction and argue that "[a]lthough the script might have been considered a derivative work in the absence of such contractual provisions, Baisden chose to convey to IRP the copyright to the *entire script* as part of the consideration in the parties' agreement." Baisden understandably fears that the district court's declarations will result in a judicial transfer of copyrights not originally envisioned in the agreements.

Upon review, we do not agree with Baisden that the district court's declarations transferred any copyright that had not already been conveyed to IRP. But nor do we agree with IRP's interpretation that the original agreements granted it rights in material it did not create. The district judge's declarations follow the language of the original agreements. They explicitly reference the specific parts of the agreements on which they were based. Under those agreements, Baisden only conveyed a copyright for the play scripts IRP created. Contrary to its assertion, IRP's copyright does not extend to the "entire script," but only to those parts for which it was responsible. It is clear that the district court shared this understanding because the declarations do not give Defendants the unrestricted right to distribute DVDs through whomever they choose, for as long as they please. Instead, IRP was limited to distributing DVDs of *Men Cry* and *Maintenance Man* "throughout the duration of the Image licensing agreement." Similarly, although IRP owed Baisden no royalties relating to future distributions of the stage play recordings, this too was limited to the

---

[9] According to Johnson, less than 1% of the dialogue in *Maintenance Man* and less than 10% of the dialogue in *Men Cry* came from the related novel.

No. 11-20290

Image licensing agreement. Had IRP truly been awarded the copyright to every part of the stage play, IRP's rights would not have been so constrained, and it would have been free to pursue additional marketing agreements.

So understood, the district court's declaratory judgment is affirmed. The rights recognized through the district court's declarations are co-extensive with those present in the original agreement. Those clearly limited IRP's copyright to material it created, and preserved Baisden's copyrights in the novels, including whatever parts were taken from them and incorporated into the stage plays.

## D.    Motion for New Trial

The trial in this case lasted nine days and left the jury to consider a 33-question, 29-page, verdict form. On appeal, Baisden now claims various defects in the jury charge, verdict form, and trial proceedings. A district court's denial of a motion for new trial is reviewed for abuse of discretion. *Alaniz v. Zamora-Guezada*, 591 F.3d 761, 770 (5th Cir. 2009). In reviewing such a denial, "all the factors that govern our review of [the trial court's] decision favor affirmance, and we must affirm the verdict unless the evidence—viewed in the light most favorable to the jury's verdict—points so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary [conclusion]." *Id.* This court separately considers each of Baisden's objections.

### 1.    Jury Instructions

Alleged defects in a district court's jury instructions are reviewed for abuse of discretion. *Wright v. Ford Motor Co.*, 508 F.3d 263, 268 (5th Cir. 2007). We apply a two-part test to review challenges to particular instructions. *Navigant Consulting, Inc.*, 508 F.3d at 293. First, an appellant must "demonstrate that the charge as a whole creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations." *Id.* (internal quotation

16

marks omitted).  Second, even where a jury instruction was erroneous, we will not reverse the district court if we find that, in light of the entire record, "the challenged instruction could not have affected the outcome of the case."  *Id.* (internal quotation marks omitted).

Baisden argues that the district court erred in not giving the jury two of his proposed jury instructions.[10]  "[T]he district court's refusal to give a requested jury instruction constitutes reversible error only if the instruction 1) was a substantially correct statement of law, 2) was not substantially covered in the charge as a whole, and 3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the [party's] ability to present a given [claim]." *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 578 (5th Cir. 2004) (internal quotation marks omitted, alterations in original).

Baisden's first requested instruction stated, in relevant part, that "[a]s a result of the Court's findings, you are instructed that pursuant to the Court's rulings, the sales of the *Men Cry in the Dark* DVD's constitute an infringement of Plaintiff's *Men Cry in the Dark* copyright."  The second instruction provided that "[a]s a result of [IRP and Image's] admissions and the Court's findings, you are instructed that pursuant to the Court's rulings, the Defendants' failure to provide Plaintiff with an accounting of the sales of the video recordings or pay him royalties from those sales constitutes a breach of contract."  Both instructions are outcome-determinative on the issues of infringement and breach of contract.  Had the district court issued those instructions there would have

---

[10] Baisden also asserts that the jury should have been instructed that IRP could be foreclosed from asserting rights under the parties' agreement if IRP had itself breached it. Because the jury concluded that IRP did not breach the agreements, we do not reach this challenge.  Similarly, Baisden challenges the district court's instruction on implied license. As discussed, *supra*, that instruction accurately stated the law in this circuit.

been a real question why these matters were not resolved at the summary judgment stage.

The proposed instructions highlight a point Baisden frequently returns to, and that we address here, namely, the preclusive effect of the district court's summary judgment holding. In the proceedings below, Defendants moved for summary judgment and the district judge referred the motion to a magistrate judge. The magistrate judge recommended that Defendants' motion be granted as to conduct occurring outside the statute of limitations, as well as to Baisden's claim for tortious interference. The district court adopted the magistrate judge's recommendations in full.

Baisden now argues that, having accepted the magistrate judge's recommendation, the district court made certain findings which should not have been submitted to the jury under the "law of the case doctrine."[11] Thus, Baisden points out that the magistrate judge found "[n]o evidence suggest[ing] that extensions were sought for either of the contracts at issue" and that "each contract terminated three years after signing."

Ignoring whether these passages actually preclude a jury from finding an implied license, "the law-of-the-case doctrine does not operate to prevent a district court from reconsidering prior rulings." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 171 (5th Cir. 2010). In *Zarnow* we observed that "[a]n order denying summary judgment is interlocutory, and leaves the trial court free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the

---

[11] Chief among these is Baisden's contention that the district court ruled that the novels and the stage play were substantially similar. Although we reject this argument for the same reasons we reject Baisden's law of the case argument, we do not reach it, having already concluded that any infringement claim would be precluded by the grant of an implied nonexclusive license.

substantive law." *Id.* (internal quotation marks omitted).  Baisden's argument that the district court was somehow prevented from doing so is without merit.

### 2.   Verdict Form.

Baisden next challenges the verdict form.  As with jury instructions, we review verdict forms for abuse of discretion.  *Travelers Cas. & Sur. Co. of Am. v. Ernst & Young L.L.P.*, 542 F.3d 475, 489 (5th Cir. 2008); *Barton's Disposal Serv., Inc. v. Tiger Corp.*, 886 F.2d 1430, 1434 (5th Cir. 1989) ("Generally, a trial court is afforded great latitude in the framing and structure of the instructions and special interrogatories given to the jury, so much so since we are loath to disturb that discretion absent a showing of abuse of discretion.").

Baisden challenges the verdict form's first question, which asked: "Do you find that IRP or Image directly infringed copyrights owned by the Plaintiffs in the novels *Men Cry in the Dark* and *The Maintenance Man*?  Answer 'Yes' or 'No' as to each alleged act of infringement."  The question then lists IRP and Image and provides separate response lines for *Maintenance Man* video sales, *Men Cry in the Dark* video sales, and the second *Men Cry* tour.  The jury responded "No" as to each defendant and all infringing acts.

Baisden now contends that this question had the effect of conflating the question of license (an affirmative defense on which Defendants bore the burden of proof) with that of infringement (a claim on which Baisden carried the burden).  The alleged effect of this question was thus to confuse jurors and prejudice Baisden by burdening him with showing that Defendants did not have a license.

We agree that the form of the question is not a model of clarity.  Nevertheless, the mere fact that issues of liability and affirmative defense were combined into a single question is not grounds for a new trial.  *See Sikes v. Gaytan*, 218 F.3d 491, 494 (5th Cir. 2000) (holding that district court did not

abuse its discretion in combining issues of liability and qualified immunity into single interrogatory). Two observations further buttress our conclusion.

First, Baisden failed to timely object to the form of the question. Where a proper objection to a verdict form is not made, we limit review to plain error. *See Jimenez v. Wood Cnty., Tex.*, 660 F.3d 841, 845 (5th Cir. 2011) (en banc). To demonstrate plain error, an appellant must show 1) an error 2) that is clear or obvious 3) that affected the appellant's substantial rights. *Puckett v. United States*, 556 U.S. 129, 135 (2009). If such a showing is made, a court may, in its discretion, remedy the error. *Id.*

The district judge reviewed the proposed instruction on license with the parties on February 24, 2011, including three of Baisden's proposed questions asking the jury whether IRP had a license for *Men Cry in the Dark*, *The Maintenance Man*, and the 2005 *Men Cry* stage play. The district judge gave Baisden the opportunity to explain why he would be prejudiced by the verdict form's question. But on February 28, 2011 when the district judge again spoke with the parties, Baisden raised no objection to this part of the verdict form. In his supplemental objections to the district court's final jury charge there also was no objection to the verdict form's first question. Even in his motion for new trial, Baisden did not address errors relating to this interrogatory. Thus, to the extent there is any error in the verdict form, it would only warrant a new trial if it were clear and obvious and affected Baisden's substantial rights.

Second, a review of the record shows that the plain error standard was not met. The district judge's instructions make clear that the jury would not have been confused by the form of the question. It instructed the jurors, in relevant part, that:

> A claim for copyright infringement is barred if a defendant has an express or implied license authorizing use of the copyrighted work. Defendants contend that Baisden gave them a license to use the copyrighted

No. 11-20290

> works . . . . *The burden is on Defendants to prove the existence of a license by a preponderance of the evidence.* If Defendants satisfy this burden then in order for Baisden to prevail, Baisden must prove by a preponderance of the evidence that Defendants' copying was not authorized by the license.

(emphasis added).

Provided this instruction, we do not believe the jury would have been so confused by the question as to necessitate a new trial. The district judge correctly instructed the jurors on the parties' respective burdens. "[J]uries are presumed to follow their instructions." *Zafiro v. United States*, 506 U.S. 534, 540 (1993). Baisden has presented nothing to convince us that this jury did otherwise. As a result, Baisden cannot show that his substantial rights were affected and has therefore failed to show plain error.[12]

Baisden also contends that the jury's verdict was inconsistent or, alternatively, not supported by sufficient evidence. He takes issue with its finding that IRP and Image entered into an agreement after IRP's corporate franchise had lapsed. But forfeiture of a corporate charter does not extinguish a corporate entity. *Hinkle v. Adams*, 74 S.W.3d 189, 193-94 (Tex. App.—Texarkana 2002, no pet.). A charter and corporate privileges can be retroactively reinstated provided a corporation pays whatever taxes it owes, in which case "it is as though the forfeiture never existed." *Id.* at 194. Here, the jury found that IRP's corporate franchise lapsed between April 9, 2004 and May

---

[12] While arguing that the district court should have broken up the first interrogatory, he also complains that the district court then asked too many questions on contractual and equitable defenses. Having found no infringement in the first question, the jury did not reach these other questions and left them blank. Accordingly, they had no adverse impact on Baisden sufficient to warrant a new trial.

24, 2006. From May 24, 2006 onwards it was reinstated, and retroactively revived for the period in lapse.[13, 14]

### 3. Evidentiary Issues

Baisden also raises a series of evidentiary issues that he believes entitle him to a new trial. Generally, any error in admitting or excluding evidence is not grounds for a new trial. Fed. R. Civ. P. 61. We review the admission or exclusion of evidence for abuse of discretion. *Tompkins v. Cyr*, 202 F.3d 770, 779 (5th Cir. 2000). Should we find that a district court has abused its discretion we review the error under the harmless error doctrine, and will affirm the ruling unless it "affected substantial rights of the complaining party." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003).

Baisden's principal objection is that he was not allowed to read the novels *Men Cry in the Dark* and *The Maintenance Man* into the record, nor show the entirety of the *Maintenance Man* DVD. Baisden provides no authority for the proposition that a jury must be read or shown every part of a disputed work during a copyright infringement trial. Here, the novels were each over 300 pages long. The DVDs were both over two hours long. The district court made a reasoned decision that granting Baisden's request would be cumulative and would significantly draw out an already lengthy trial. Importantly, the district court permitted extensive testimony on the works. Both Baisden and Johnson testified and were cross-examined on the similarities between the novels and the

---

[13] Baisden contends that there is a conflict between the jury finding both that the parties entered into written agreements providing for certain merchandise royalty terms and that IRP did not breach those terms despite having failed to comply with them. This argument is without merit because the jury also found that the parties entered into an agreement whereby each would keep its own merchandise revenues.

[14] Baisden's argument that the agreement between IRP and Image did not go into effect until IRP completed delivery of various items required under the contract, including a certificate of incorporation and chain of title, is without merit. The agreement clearly states that it was effective November 15, 2005.

stage plays. That testimony covered each story's concept, plot, characters, and dialogue. The district court also permitted the jury to watch the entirety of the *Men Cry* DVD. The jury also had both the novels and DVDs during deliberations and was properly instructed that a "side-by-side comparison must be made between the original and the copy to determine whether the intended audience would view the two works as substantially similar."[15] This obviated any need to read the novels into the record or have the jury watch another two-hour DVD. In any case, because we uphold the jury's verdict on the basis of an implied nonexclusive license, any errors relating to whether the works were substantially similar would not mandate a new trial.

Baisden also complains that the admission of IRP's derivative copyrights confused the jury's understanding of what rights a derivative copyright holder could transfer.[16] It is unclear how the jury would have been confused simply by the admission of the copyrights. Baisden has also not made clear how the jury's verdict would have differed had the copyrights been excluded.

Finally, Baisden argues that statements made by Defendants' counsel were "designed to have a negative impact on the jury's perception" of him. He singles out counsel's questions on the overlap between his marriage and his authoring the book, *Never Satisfied: How and Why Men Cheat*, other aspects of his family life, and that he only "stopped in Houston, Texas on his way from the South Side of Chicago by way of Dallas."

---

[15] Less clear is whether the jury had access to a DVD player during deliberations. As the parties' briefs do not address this issue, and because we find that Baisden did grant an implied license, this court will not speculate on this point further.

[16] A derivative copyright is a copyright to a "work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101. Such a copyright "extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material." 17 U.S.C. § 103(b).

No. 11-20290

A motion for new trial premised on improper arguments by counsel should only be granted when "improper closing argument irreparably prejudices a jury verdict or if a jury fails to follow instructions." *Nissho-Iwai Co., Ltd. v. Occidental Crude Sales, Inc.*, 848 F.2d 613, 619 (5th Cir. 1988). We will not reverse a grant or denial of a new trial unless the district court abused its discretion. *Id.* We also recognize that "[a] trial judge is generally better able than an appellate court to evaluate the prejudice flowing from improper jury arguments." *Caldarera v. E. Airlines, Inc.*, 705 F.2d 778 (5th Cir. 1983).

Although Baisden alleges prejudice now, he raised no objection to the statements at trial. Baisden has thus waived his objection to these statements, and this court need not consider them. *See Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 376 (5th Cir. 1989) (where defendant failed to move for mistrial on basis of remarks, court would "not now entertain [defendant's] argument that [plaintiff's] trial tactics are grounds for a new trial"); *Nissho-Iwai Co., Ltd.*, 848 F.2d at 619.[17]

Accordingly, we affirm the district court's denial of Baisden's motion for a new trial.

---

[17] Baisden has also made no effort to show how these statements would have affected the outcome at trial. Moreover, none of the statements rise to the level of severity that would require a new trial to avoid a miscarriage of justice. *See McClaran v. Plastic Indus., Inc.*, 97 F.3d 347, 359-60 (9th Cir. 1996) (repeated references to manufacturer's wealth and power, plaintiff's hard-working nature and difficult financial circumstances, appeal to regional bias, attempt to coach witness with baseless objections, and repeated questions about inflammatory subjects not sufficiently severe to warrant new trial).

## E.    Tortious Interference[18]

In addition to his claims for copyright infringement and breach of contract, Baisden also brought a claim for tortious interference. Baisden's claim was premised on an option contract between Farcor Baisden Partnership, L.L.C. and Behave Productions, Inc., to develop a *Maintenance Man* movie. The district court granted Defendants' motion for summary judgment as to this claim for lack of standing. The district court based its decision on the fact that Baisden was not a party to the contract at issue, and that Farcor Baisden Partnership, L.L.C. was not named as a party in this action. On appeal, Baisden renews his argument that he was an intended third-party beneficiary because the contract directed that payments be made directly to him and that he provide chain of title.

We agree with the district court that this claim was properly dismissed for lack of standing. Baisden was not a party to the contract and thus cannot assert a claim for tortious interference. *See Nauslar v. Coors Brewing Co.*, 170 S.W.3d 242, 250 (Tex. App.—Dallas 2005, no pet.) ("A partner has no individual, separate cause of action for losses suffered by reason of tortious interference with a contract between the partnership and a third party: damages for loss in value of the partnership interest or employment losses are subsumed in the partnership's causes of action."); *Hill v. Baylor Univ. Med. Ctr.*, No. 05-97-00238, 2000 WL 31795, at *1-*3 (Tex. App.—Dallas Jan. 18, 2000, pet. denied) (unpublished opinion) (holding that plaintiff, who signed contract at issue as president of each of two contracting parties but who sued for tortious interference in only his personal capacity, lacked standing "[b]ecause the cause

---

[18] Baisden also appears to argue that the district court erred in not entering judgment as a matter of law in favor of his breach of contract claim. But while including this in his argument summary he fails to include it in his principal brief. "A party that asserts an argument on appeal, but fails to adequately brief it, is deemed to have waived it." *United States v. Scroggins*, 599 F.3d 433, 446 (5th Cir. 2010).

of action for tortious interference is recognized for 'a party to a contract'"). The cases Baisden relies on in opposition are inapposite. *See Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002) (discussing third-party beneficiary status in context of breach of contract claim).[19]

## F.    Attorneys' Fees

Defendants' sole point of error is the district court's decision not to award them attorneys' fees. Pursuant to § 505 of the Copyright Act, a court may award reasonable attorneys' fees to the prevailing party in a copyright dispute. 17 U.S.C. § 505. We review a district court's decision to deny attorneys' fees for abuse of discretion. *Positive Black Talk Inc.*, 394 F.3d at 380.

The district court considered the arguments Defendants renew on appeal and concluded that Baisden's suit was neither frivolous nor unreasonable. The district court reached its conclusion by correctly applying the factors discussed in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994). The court took particular note of the fact that Baisden's suit survived several pretrial motions and resulted in a nine-day jury trial. Finding no error in the district court's reasoning and agreeing with its assessment of Baisden's claims, we hold that the district court did not abuse its discretion. The district court's decision to deny attorneys' fees is affirmed.

---

[19] In his reply brief, Baisden argues, for the first time, that Farcor Baisden Partnership, L.L.C. has dissolved, leaving him to bring a suit for tortious interference. However, "[w]hile the proof required to establish standing increases as the suit proceeds, the standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (citations omitted); *Carr v. Alta Verde Indus., Inc.*, 931 F.2d 1055 (5th Cir. 1991) ("As with all questions of subject matter jurisdiction except mootness, standing is determined as of the date of the filing of the complaint . . . ."). Baisden thus had to establish standing at the time his suit was filed. Having failed to do so, his claim for tortious interference was properly dismissed.

No. 11-20290

## III. CONCLUSION

For the aforementioned reasons, the district court's judgment is AFFIRMED in all respects.