# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 13, 2022

Lyle W. Cayce
Clerk

No. 21-10683

Aperia Solutions, Incorporated,

*Plaintiff—Appellee*,

*versus*

eVance, Incorporated,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:18-CV-3276

Before Smith, Wiener, and Southwick, *Circuit Judges*.

Jacques L. Wiener, Jr., *Circuit Judge*:*

Defendant-Appellant eVance, Incorporated ("eVance, Inc.") appeals the district court's denial of its motion for a new trial. We conclude that there was a legal error in the verdict form, so we REVERSE and REMAND for a new trial.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-10683

I.

Factual Background

In July 2016, Plaintiff-Appellee Aperia Solutions, Incorporated ("Aperia") and eVance Processing, Incorporated ("eVance") entered into a General Services Agreement ("GSA") so that Aperia could "provide Internet based reporting and management systems for eVance Processing and its merchants." Excel Corporation ("Excel") was the holding company for eVance. In July 2017, eVance began to fall behind on its payments to Aperia. In December of that year, the two companies agreed on a plan for eVance to catch up on its payments.

The trouble continued higher up the corporate chain. When it defaulted on a loan, Excel and its assets, including eVance, were foreclosed on and sold at public auction. That was on April 9, 2018. The OLB Group bought all of eVance's assets at the foreclosure sale. The terms of that sale are contained in a memorandum ("the Sale Memorandum"). The OLB Group only purchased the assets of the company: It did not take on eVance's 3.5-4.5 million dollars in liabilities. eVance still owed Aperia $56,847.84 ("the Outstanding Debt") at the time of the sale.[1]

The OLB Group created and owns eVance, Inc., a new entity created to purchase the eVance assets at the sale. Patrick Smith, formerly the general manager of eVance and the CEO of Excel, was hired as the general manager of eVance, Inc. and the vice president of finance of the OLB Group. Both

---

[1] The Outstanding Debt consists of four invoices: Invoice #201308766 ($14,384.94 for December 2017), Invoice #201308943 ($14,300.62 for January 2018), Invoice #201309102 ($14,315.90 for February 2018), and Invoice #201309253 ($13,846.38 for March 2018).

parties stipulated to the fact that "The Sale Memorandum does not impose any obligation on eVance, Inc. to pay the Outstanding Debt."

In the months following the sale, Aperia provided services to the new entity, eVance, Inc., which sent payments to Aperia. Each side presents a contrary narrative of (1) what these payments were for, (2) whether the original agreement was continued, and (3) whether the new entities were negotiating new terms while services continued. For example, eVance, Inc. contends that it was making "good faith" payments to continue the business relationship. Aperia points out that (1) the payment amounts matched the invoices from the Outstanding Debt and (2) Smith assured Aperia that the new entity would pay eVance's debt. The relationship ended on September 18, 2018 when eVance, Inc. stopped using Aperia's services.

## II.

## Procedural History

Aperia sued eVance, Inc. and the case went to a jury. At the close of Aperia's case, eVance, Inc. moved for a directed verdict "on Aperia's second claim for breach of contract regarding the outstanding debt." eVance, Inc. explained that "[i]f there was an agreement for eVance, Inc. to pay the outstanding debt, which Aperia claims there was, then it wasn't breached, and there are no damages. Because Aperia already acted as if there was such a contract and applied the wire transfers to the outstanding debt."

The district court granted eVance Inc.'s motion for a directed verdict. The court noted, however, that "it won't matter" in the long run because the same damages could be recovered under alternative legal theories. The court explained:

> Here is why. You can still get all your damages if there is an assumption of the GSA, right? And the new eVance is stepping into old eVance's issues and full future damages are

recoverable. I do think that this is a math question with one-sided evidence where the payments were credited to the outstanding debt. But I think even if there is not an assumption of the GSA, that is where promissory estoppel and quantum meruit come in for new work performed and money that should go for new work performed. I know we have issue on lost profits there, right? Lost profits could not apply for promissory estoppel and quantum meruit, in my mind. But you have a way to get full damages on the contract claim on assumption of the GSA. And to get everything lost profits under a promissory estoppel theory or quantum meruit theory, if there is not a finding on assumption of the GSA.

At that point, Aperia noted that it believed it had tried a ratification case and would begin to research jury instructions on ratification.

Two questions were ultimately presented to the jury: (1) Did eVance, Inc. purchase the GSA and (2) did eVance, Inc. ratify the GSA. The jury instructions defined "Ratification" as:

A party's conduct includes conduct of others that the party has ratified. Ratification may be express or implied. Implied ratification occurs if a party, though he may have been unaware of unauthorized conduct taken on his behalf at the time it occurred, retains the benefits of the transaction involving the unauthorized conduct after he acquired full knowledge of the unauthorized conduct. Implied ratification results in the ratification of the entire transaction.

The jury concluded that eVance, Inc did not purchase the GSA. It did decide, however, that eVance, Inc. ratified the GSA. Based on that ratification, the jury held that eVance, Inc. did not comply with the GSA and awarded damages of $39,368.57 to Aperia. The jury did not consider alternative claims for promissory estoppel or quantum meruit because it held that eVance, Inc. breached the ratified GSA.

No. 21-10683

eVance, Inc moved for a new trial which the district court denied. eVance, Inc. contended that the ratification question was legally erroneous because a party cannot ratify a contract to which it was not a party. The district court rejected that idea, explaining that "the ratification issue presented to the jury was whether [eVance,] Inc. ratified Patrick Smith's agreement to bind the company to the terms of the [GSA,] not whether [eVance,] Inc. ratified conduct or agreements made by [eVance] Processing."

The district court stated that eVance, Inc. raised this issue for the first time in its motion. However, eVance, Inc. had made this contention during trial, before the question was presented to the jury:

> There is [*sic*] cases going back to the '70s in the Texas Intermediate Appellate Courts that say that ratification cannot be used for one contract to move from one party to another unless the contract contemplated that that party, the specific party that is alleged to have ratified it, was potentially a beneficiary of that underlying agreement. The contract was made for them or it could end up being theirs. . . .

> [W]e think it's an improper statement under Texas law to be applicable here for the reasons outlined in some of the cases that we have sent to the court. But in effect, ratification cannot be used to impose contract liability on a party like eVance, Inc., who is explicitly not contemplated to potentially be a party to or beneficiary of the contract that is in the GSA, pursuant to section 14.5, the third party beneficiary section and some of the other sections we've referenced.

The district court also denied eVance, Inc.'s second motion for a new trial, entered a final judgment, and granted Aperia's motion for attorney's fees.

No. 21-10683

## III.

## Standard of Review

We review a district court's denial of a motion for new trial for abuse of discretion.[2] We also review jury instructions and verdict forms for abuse of discretion.[3] It is an abuse of discretion to rely "on erroneous conclusions of law."[4]

We apply a two-part test to review jury instructions.[5] "First, an appellant must 'demonstrate that the charge as a whole creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations.' Second even where a jury instruction was erroneous, we will not reverse the district court if we find that, in light of the entire record, 'the challenged instruction could not have affected the outcome of the case.'"[6]

## IV.

## Analysis

Contractual ratification "is the enforcement of a promise to perform all or part of an antecedent contract of the promisor, previously voidable by him, but not avoided prior to the making of the promise."[7] Voidable means that "a party can avoid, or disaffirm, his duty of performance."[8] The

---

[2] *Fornesa v. Fifth Third Mortg. Co.*, 897 F.3d 624, 627 (5th Cir. 2018).

[3] *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 504-06 (5th Cir. 2012).

[4] *McClure v. Ashcroft*, 335 F.3d 404, 408 (5th Cir. 2003).

[5] *Baisden*, 693 F.3d at 505.

[6] *Id.* (internal citations omitted; quoting *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 293 (5th Cir. 2007)).

[7] *Wamsley v. Champlin Refin. & Chems., Inc.*, 11 F.3d 534, 538 (5th Cir. 1993) (quoting Restatement (Second) of Contracts § 85 (1981)).

[8] *Id.*

6

No. 21-10683

antecedent contract is key. "[T]here can be no ratification of a contract by one who is not a party to it unless the original contract purported to be in the name of, or for, the person alleged to have ratified it."[9]

Aperia does not contest the legal requirement that, to ratify a contract, a party must be included in the original contract. Instead, Aperia adopts the district court's reasoning that Aperia had "presented evidence at trial conclusively establishing that Smith entered into an oral contract with Aperia for Aperia to provide services to eVance. The services that were to be provided were the exact same services contemplated under the GSA, under the same terms and conditions memorialized in the GSA, and for the same prices expressly set out in the GSA."

The district court and Aperia are correct: An oral contract can be binding.[10] But that issue was not presented to the jury. Rather, the jury was asked: "Did eVance, Inc. ratify the General Services Agreement?" As a matter of law, eVance, Inc. — which was not a party to the GSA (nor even existed as an entity at the time the GSA was created) — could not ratify it.

---

[9] *Gold's Gym Franchising LLC v. Brewer*, 400 S.W.3d 156, 162 (Tex. App. 2013); *see also Castelan v. Gerard*, 2018 WL 2727781, at *3 (Tex. App. 2018) ("As such, he cannot ratify a contract to which he was never a party."); *Huginnie v. Loyd*, 483 S.W.2d 696, 702 (Tex. Civ. App. 1972) (*aff'd on reh'g*) ("As the contract here involved was not made in the name of [Party A], nor purported to be made for him, his acquiescence therein and promise to honor the contract and make a deed to the property in question to [Party B], there being no writing to that effect, did not amount to a ratification and a summary judgment was proper."); *Warren Mfg. Co. v. Hoover*, 223 S.W.2d 524, 527 (Tex. Civ. App. 1949) ("The rule is well established by the authorities that, to make a valid ratification of a contract by a person who is not a party to it, the original contract must purport to be in the name of, or for, the person alleged to have ratified it.").

[10] *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972) ("The conception is that of a meeting of the minds of the parties as implied from and evidenced by their conduct and course of dealing, the essence of which is consent to be bound.") (citations omitted)).

No. 21-10683

The evidence might show that Smith entered into an oral agreement to bind the company. "In order to have a valid and binding contract, there must be: (1) an offer; (2) acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding."[11] The jury never answered whether an agreement was formed, yet it must do so in the first instance.[12] It was inappropriate for the district court to rely instead on a theory of ratification that precluded eVance, Inc. from doing the ratifying.

We "will reverse a judgment 'only if the charge as a whole creates a substantial doubt as to whether the jury has been properly guided in its deliberations.'"[13] The district court abused its discretion because its jury questions were framed to present an erroneous legal theory and did not answer whether Smith entered into an oral agreement or whether the same damages could be recovered under an alternative legal theory.

## V.

## Holding

The district court's judgment is REVERSED and the case is REMANDED for a new trial.

---

[11] *Lloyd Walterscheid & Walterscheid Farms, LLC v. Walterscheid*, 557 S.W.3d 245, 258 (Tex. App. 2018).

[12] *R.R. Comm'n v. Gulf Energy Expl. Corp.*, 482 S.W.3d 559, 575 (Tex. 2016) ("The question of the parties' intent to be bound is usually one of fact, and we cannot say that this case presents the unusual situation in which that question may be decided as a matter of law.").

[13] *Dahlen v. Gulf Crews, Inc.*, 281 F.3d 487, 494 (5th Cir. 2002) (quoting *C.P. Interests, Inc. v. Cal. Pools, Inc.*, 283 F.3d 690, 700 (5th Cir. 2001)).